IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DOUGLAS NEWPHER, )
 )
      Plaintiff, )
 )
vs. ) Case No. 15-cv-479-TLW
 )
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
 )
      Defendant. )

## OPINION AND ORDER

Plaintiff Douglas Newpher seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 9). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## ISSUES

Plaintiff essentially challenges the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") decision arguing that (1) "the ALJ improperly weighed the physician opinions" by giving less weight to treating physician Roger Kinney, M.D.'s opinion in favor of another treating physician's and two consultative examiners' opinions; and (2) "failed to properly consider [plaintiff's] pain" when determining his credibility. (Dkt. 14 at 2 and 8).

---

[1] Effective January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

**STANDARD OF REVIEW**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**ANALYSIS**

**RFC and Opinion Evidence**

Plaintiff argues three specific issues under the broad allegation that the ALJ "improperly weighed the physician opinions." Specifically, plaintiff argues that the ALJ: (1) erred in evaluating Dr. Kinney's opinion by failing to conduct a proper treating physician analysis, (2) improperly discounted plaintiff's ability to walk and use his feet, and (3) improperly "cherry-picked" portions of Dr. Snider's consultative mental examination to support his decision that plaintiff is not disabled. (Dkt. 14).

**Dr. Kinney**

Dr. Kinney treated plaintiff for a variety of issues ranging from constipation to pain mediation refills from November 2, 2012 to November 2, 2013. (R. 307-11, 326-29, 330-40, 341-49, 350-55, 361-65). On April 26, 2013, Dr. Kinney completed a Medical Source Statement, in which he said that he treated plaintiff for hypertension, chronic pain, back pain, anxiety, chronic constipation, chronic knee pain, and a fractured coccyx. (R. 326-29; 350-55).[2] He opined that plaintiff was unable to work as of October 9, 2012[3] due to "low back pain" and "fracture, coccyx." (352-53). Dr. Kinney further opined that plaintiff's ability to stand and walk would be affected by chronic back pain and "old fracture, feet." (R. 353). Although Dr. Kinney noted that pain would be a "significant part of the above limitations" regarding standing and walking, he answered "N/A" when asked "[w]hat causes the pain in the above impairments?" (R. 354). He stated pain would limit plaintiff's ability to complete an eight-hour workday and would interfere with plaintiff's concentration. Id. Further written answers on this statement are in a different handwriting, not that of Dr. Kinney, with no signature of the author; however, those answers imply that plaintiff can sit two hours out of eight, that plaintiff cannot stand or walk "without support of [a] cane or walker," that lifting causes pain, that he could not lift ten pounds "repeatedly for a third of a workday without serious problems or pain exacerbations," and that plaintiff would require unscheduled breaks every 10 to 15 minutes during a workday. (R. 354-55).

---

[2] Plaintiff submitted two Medical Source Statements from Dr. Kinney, both dated April 26, 2013, containing the same information. (R. 326-29; 350-55). The only difference between Exhibit 8F and Exhibit 11F is an undated, handwritten note, signed by Dr. Kinney and attached to the front of Exhibit 11F stating "I have personally reviewed these forms and agree with all of the responses." (R. 351). The ALJ rejected this note during the December 26, 2013 hearing. (R. 71).

[3] Plaintiff's alleged onset date is April 1, 2012 (R. 32-33), and Dr. Kinney does not explain this inconsistency.

Dr. Kinney did not fill out half of the statement himself, the handwriting is markedly different from question 12 forward, and at least two questions, how long he treated plaintiff and how long he felt plaintiff's restrictions "indicated above" would last, were left unanswered. (R. 350-55). During the hearing, the ALJ called both statements into question, and offered plaintiff's counsel additional time to resolve what he viewed as an inconsistent treating physician opinion; however, plaintiff's counsel declined the opportunity. (R. 71-72).

Ordinarily a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Hackett, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 F. App'x 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other

substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Anderson v. Astrue, 319 F. App'x 712, 717 (10th Cir. 2009) (unpublished).[4]

Plaintiff argues that the ALJ failed to properly analyze Dr. Kinney's opinion that he "is permanently and totally disabled." (Dkt. 14 at 2). Plaintiff further argues that "[w]hen a treating physician's opinion is inconsistent with other medical evidence,[5] the ALJ's task is to examine *the*

---

[4] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

[5] The Court notes that in making this argument, plaintiff essentially concedes that Dr. Kinney's opinion "is inconsistent" with the remaining evidence of record.

5

*other physicians' reports* 'to see if [they] outweigh[ ]' the treating physician's report, not the other way around." (Id. at 3.) (emphasis in original) (citing Reyes v. Bowen, 845 F. 2d 242, 244 (10th Cir. 1988)). Plaintiff's arguments misunderstand two important factors. First, the ALJ properly considered Dr. Kinney's opinion in light of 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p. The ALJ determined that Dr. Kinney's opinion was not "well supported by medically acceptable clinical and diagnostic techniques," was "inconsistent with the other substantial evidence," and that Dr. Kinney's statement that plaintiff was disabled "can never be entitled to controlling weight." (R. 23-24) (citing 20 C.F.R. 404.1527 (c)(2); SSR 96-2p). Second, the ALJ properly followed the logic found in Reyes, and analyzed the other physicians' reports and records to verify that Dr. Kinney's opinion was outweighed by substantial evidence. (R. 24).

Plaintiff argues that Dr. Kinney's records and opinion are "consistent with all of the other doctor's [sic] records and the testimony and written statements."[6] (Dkt. 14 at 6). A review of the ALJ's decision in conjunction with the record reveals that this statement is misleading. The evidence discussed by the ALJ clearly does not support Dr. Kinney's opinion.

The ALJ noted consultative examiner Dr. Krishnamurthi's findings that plaintiff experiences pain with both heel and toe walking, but has a normal gait; has normal ranges of motion in his upper extremities; normal range of motion in his lumbosacral and cervical spine; "diminished" range of motion in his right ankle due to pain; and normal range of motion in his left lower extremity. (R. 22, 293-95). The ALJ also noted Dr. Krishnamurthi's findings that plaintiff was able to walk without a cane or brace, and that he sat on the examination table "without much difficulty." (R. 22, 294). The ALJ further relied on records from plaintiff's physician Dr. Dunitz, which showed "decreased range of motion in [his] right knee, but full range of motion of the left

---

[6] As discussed *infra*, the Court finds no error with the ALJ's credibility finding; therefore, plaintiff's subjective complaints do not support this argument.

knee and each hip. Most notably, [plaintiff's] gait remained normal." (R. 22, 359). Dr. Dunitz's records also contain an MRI of plaintiff's right knee showing "mild to moderate chondromalacia in the medial knee joint compartment" and no other significant findings. (R. 357). Dr. Kinney's own treatment notes consistently show that plaintiff denied "any new problems or complaints," and that his "[c]hronic pain [was] controlled on present regimen." (See, e.g., R. 337, 338, 364). See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (an ALJ must consider the effectiveness of treatment).

None of these records, including Dr. Kinney's own treatment records, support Dr. Kinney's limited opinion that plaintiff would need a break "every 10-15 minutes." See Castellano v. Sec. of Health and Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994) (ALJ reasonably discounted treating physician opinion that was not supported by his own notes). Further, the ALJ correctly found that Dr. Kinney's opinion was "not supportable and not indicated in other sources' reports"; therefore, it could not be given controlling weight. See SSR 96-2p, 1996 WL 374188.

While the ALJ's opinion could be more clear, the Court is easily able to follow his reasoning. The ALJ noted consistent contradictory evidence throughout the record from Dr. Kinney and other physicians to support his finding that plaintiff's subjective complaints are unsupported, and that Dr. Kinney's Medical Source Statement is unsupported. (R. 19-24). Any technical errors are harmless, because the Court "cannot insist on technical perfection." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

Thus, the ALJ's treating physician analysis with respect to Dr. Kinney does not amount to reversible error.

**RFC Limitations**

Plaintiff argues that the ALJ "attacks [plaintiff's] ability to walk" and failed to include limitations in his RFC to accommodate plaintiff's severe impairment of status post crush injury of both feet by relying on evidence from consultative examiner Dr. Krishnamuthi to discount the severity of his condition. (Dkt. 14). Plaintiff contends that the ALJ's RFC for a reduced range of sedentary work is inconsistent with plaintiff's subjective complaints,[7] Dr. Kinney's opinion, and evidence from Timothy Siegfried, D.P.M., and Brian Hightower, D.O. Id.

The Court has already discussed Dr. Kinney's opinion *supra*. Plaintiff argues that Dr. Siegfried's records show a CT scan of plaintiff's right ankle, and that Dr. Siegfried "tried several braces to immobilize [plaintiff's] ankle (that affects standing and walking) with varying results and injection therapy." (Dkt. 14 at 5).

It is clear that the ALJ reviewed Dr. Siegfried's records from his discussion and summary of the same. (R. 21-22; R. 244-57). Dr. Siegfried's records are not helpful to plaintiff. Dr. Siegfried advised plaintiff on March 24, 2011, after the CT scan of his right ankle, that he was a good surgical candidate to correct the damage, but he would have to "quit smoking at least six to eight weeks prior to surgical correction." (R. 252). Instead, plaintiff received conservative therapy in the form of injections, boots, and inserts. Dr. Siegfried again discussed surgery during plaintiff's May 31, 2011 appointment, and plaintiff again chose to wait. (R. 253). By plaintiff's June 28, 2011 visit, he was no longer a surgical candidate because he continued to smoke, so Dr. Siegfried sought and received authorization for an Arizona brace which would allow plaintiff greater mobility and

---

[7] This is a credibility challenge, and is discussed *infra* at 10. See Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

reduce his pain. (R. 254). Plaintiff's final visit with Dr. Siegfried shows that plaintiff was "doing very well with the brace," and he reported being "stable as an old 'billy goat.'" (R. 257).

The one record plaintiff highlights from Dr. Hightower is a single visit on July 13, 2012, and records plaintiff's subjective complaints that his current treatment was not working for back pain. (Dkt. 14 at 5-6; R. 266). Plaintiff failed to note a subsequent visit with Dr. Hightower on September 10, 2012 which shows decreased back pain. (R. 262). These records do not support plaintiff's claims of total disability.

The Court finds the ALJ's RFC is supported by substantial evidence.

**Consultative Examining Psychologist**

Plaintiff argues that because the ALJ should have given great weight to Dr. Kinney's treating physician opinion, the ALJ must have erred in giving great weight to the consultative examining psychologist. (Dkt. 14). Plaintiff argues that Dr. Snider only examined plaintiff on one occasion, and that the ALJ "cherry-picked" portions of Dr. Snider's consultative mental examination by leaving out one sentence of Dr. Snider's opinion to support his decision that plaintiff is not disabled. Id.

A consultative examiner's opinion is *generally* entitled to less weight than a treating physician's opinion, but an ALJ may give a consultative examiner's opinion more weight as long as he gives a legally sufficient reason for doing so. 20 C.F.R. § 404.1527(1), (2); Soc. Sec. R. 96–6p. See also Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (holding that an ALJ may give greater weight to a non-examining agency physician over a treating physician if he gives "a legally sufficient explanation for doing so.").

The ALJ noted that Dr. Snider found that plaintiff suffers from mild depression, generalized anxiety, and panic disorder. (R. 22). The ALJ found that these assessments are

consistent with the record evidence because plaintiff "has only a mild restriction" in his daily activities and "little to mild impairment in his memory and concentration." (R. 19, 23). At step two, the ALJ specifically discussed that Dr. Snider "predicted there would be moderate difficulty in [plaintiff's] concentrating and persisting through a normal workday," and there "could also be a moderate disruption in his work schedule due to psychiatric symptoms." (R. 19). These findings mirror Dr. Snider's opinion. (R. 303-04). Plaintiff argues that the ALJ "cherry-pick[ed]" the evidence by omitting the second sentence. (Dkt. 14 at 6). Since the ALJ included both sentences that plaintiff now complains he omitted, this argument is erroneous. The ALJ carried this step two finding of moderate limitation on concentration, persistence, or pace forward to plaintiff's RFC with the limitation to "simple, routine, and unskilled work." (R. 20). The ALJ referenced his previous discussion of the evidence in reaching the conclusion that the consultative examiners were entitled to great weight.

The ALJ's findings are supported by substantial evidence in the record. To remand the case for the ALJ to include both sentences in his RFC discussion would produce an absurd result that would waste administrative resources. See generally Alvey v. Colvin, 536 F. App'x 792, 794 (10th Cir. 2013) (holding that the Court could engage in a harmless error analysis "sua sponte on appeal when, as here, the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings.") (citing Wyoming v. Livingston, 443 F.3d 1211, 1226 (10th Cir. 2006)). The ALJ's decision to give great weight to this opinion was legally proper and supported by substantial evidence.

**Credibility**

Plaintiff argues that the ALJ's credibility finding is in error and that plaintiff's credibility is supported by the same medical evidence that the ALJ allegedly ignored or minimized,

specifically, that the ALJ ignored pain caused by plaintiff's fractured coccyx. (Dkt. 14 at 9-10). The Commissioner argues that the ALJ cited multiple reasons to support his credibility findings. (Dkt. 17).

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Sec'y of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Here, the ALJ relied on medical evidence demonstrating plaintiff's "normal range of motion in his lower extremities and that he had a normal gait." (R. 23; dkt. 17 at 8). Further, the ALJ noted a number of contrary statements made by plaintiff and his wife. Id. For instance, plaintiff alleges that he can only sit for fifteen minutes, yet he reported to Dr. Krishnamurthi that he could "sit for 'two hours.'" (R. 23). The ALJ noted that plaintiff could walk without his brace or cane, even though he claimed he could not work because he was "'not stable enough' to get up and walk." Id. See 20 C.F.R. § 416.929(c)(4) (evidence evaluated includes conflicts and inconsistencies in plaintiff's statements); SSR 96-7p, 1996 WL 374186 at *5 ("One strong

indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Further, instances highlighted by plaintiff as proof of plaintiff's "horrible fractured coccyx pain which limited his sitting as Dr. Kinney described" are actually notations of an old fracture in his medical record, not a new or ongoing problem. (Dkt. 14 at 9-10; R. 331-40). In fact, record of an office visit on July 17, 2013 (R. 337) shows that plaintiff presented for a follow up visit to refill his pain medication, "denie[d] any new problems or complaints," and that his "chronic pain [was] controlled on present regimen." Id.

Further, none of plaintiff's other doctors placed similar limitations on him, and the ALJ notes that plaintiff's gait consistently remained normal. (R. 22-23). These facts directly conflict with plaintiff's alleged impairments. The ALJ, then, satisfied his duty to link his credibility findings to specific evidence.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 29th day of March, 2017.

_____
T. Lane Wilson
United States Magistrate Judge